IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2015, at Jackson

## STATE OF TENNESSEE v. COREY EUGENE HUDDLESTON

**Appeal from the Circuit Court for Dickson County
No. 22CC-2013-CR-361      Suzanne Lockert-Mash, Judge**

_____

**No. M2014-02543-CCA-R3-CD – Filed July 22, 2015**

_____

The Defendant, Corey Eugene Huddleston, pleaded guilty to escape, a Class E felony, and the trial court sentenced the Defendant to four years, suspended to supervised probation. This conviction was ordered to run consecutively to the sentence the Defendant was serving at the time of his escape from the Dickson County Jail. A violation of probation warrant was issued for the Defendant's arrest based upon multiple violations of probation rules. After a hearing, the trial court revoked the Defendant's probation sentence and ordered service of the balance of the sentence in confinement. The Defendant appeals, contending that the trial court's decision to fully revoke his probation sentence was arbitrary. After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

William B. Lockert, III, District Public Defender, Ashland City, Tennessee, for the appellant, Corey Eugene Huddleston.

Herbert H. Slatery III, Attorney General and Reporter; Meredith Devault, Senior Counsel; Wendall Ray Crouch, Jr., District Attorney General; and Billy Henry Miller, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Background**

A Dickson County grand jury indicted the Defendant for felonious escape from the Dickson County Jail on June 7, 2013. On December 3, 2013, the Defendant pleaded guilty to this charge, and the trial court sentenced the Defendant to four years suspended to supervised probation, ordering that this sentence run consecutively to the sentence the Defendant was serving at the time of his escape.

On May 29, 2014, a violation of probation warrant was issued for the Defendant's arrest. The probation warrant alleged that the Defendant had violated his probation by: (1) being arrested for theft on April 8, 2014, and for trespassing and theft on May 3, 2014; (2) failing to report his new charges to his probation officer; (3) failing to report to the probation office on May 22, 2014, for his monthly probation appointment; and (4) failing to pay court-ordered fees. The Probation Violation Report summarized the alleged violations as follows:

> [The Defendant] was charged with escape on 12/02/13 in the Circuit Court of Dickson, TN and received a 4 year suspended sentence in the TDOC. [The Defendant] was ordered to pay $545.00 in court fees and he has never made a payment. He also has never made a probation fee payment and is $180.00 in arrears. On 04/08/14 [the Defendant] was charged with theft by the Dickson County Sheriff for theft. [The Defendant] reported to probation office on 04/30/14 and never reported arrest. On 05/03/14, [the Defendant] was again arrested for theft by the Dickson County Sheriff's Department as well as criminal trespassing and a VOP issued by PSI Probation for 4 counts of assault. On 05/24/14 [the Defendant] was arrested on 2 counts of failure to appear. Neither arrest on 05/03/14 nor arrest on 05/24/14 was reported to probation officer. [The Defendant] never reported as instructed to May, 2014 probation appointment.

## II. Facts

At the November 26, 2014 hearing on the probation violation, Brad Fanta, the Defendant's supervising probation officer, testified that, in the time since he had filed the probation violation report seeking an arrest warrant, the Defendant had been adjudicated guilty of the two new theft charges. Officer Fanta provided certified copies of the two theft convictions. Officer Fanta confirmed that the Defendant had never reported the new charges. He further confirmed that the Defendant had made no payments toward his required court fees and that the Defendant had failed to report for his May probation appointment. Officer Fanta stated that, based upon his experience with the Defendant, the Defendant was "probably not" a good candidate for probation.

On cross-examination, Officer Fanta testified that he was aware that the Defendant had been "working with Pastor Jannet" in the Celebrate Recovery Program. Officer Fanta confirmed that the program was a "spiritually based, 12-step program." Officer Fanta agreed that the Defendant had been "cooperative" while serving his probation sentence.

The Defendant testified that he had been accepted into the Celebrate Recovery Program, a program that he would attend every Wednesday and Sunday. The Defendant stated that he had already begun "doing the step work" for the program. The Defendant stated that he also had employment should the trial court reinstate his probation. He planned to drive himself to work and to his probation appointments and his uncle had agreed to help pay for gas for his car.

The Defendant testified that he missed his May probation appointment because he believed the appointment was on May 24, 2014, rather than May 22, 2014. He explained that he made this mistake because Officer Fanta had rescheduled the appointment at some point. The Defendant affirmed that he would continue to report regularly if the trial court granted a probation sentence. About the two new theft convictions, the Defendant explained that he was replaced at work while he was taking time off due to his gallbladder surgery. Discouraged by being laid off, the Defendant used opiates and "just lost it." The Defendant said that he was "homeless" at the time but now, if released, would live with his mother. The Defendant stated that, given the opportunity, he would successfully complete his probation sentence and complete any special conditions required of him. He explained his commitment to successful completion of the probation sentence saying that, in the past, he had "always" "done [his] time" but now he needed to be available to help his mother and his grandchildren.

On cross-examination, the Defendant agreed that he had participated in at least three rehabilitation programs. He participated in all three programs while either serving a jail sentence or a probation sentence. The Defendant stated that he committed the second offense for theft, taking approximately $233.85 worth of meat from a Walmart, in an attempt to return to jail because he was homeless and "on the dope." He said that he "wanted to get out of the street 'cause [he] was in bad shape."

Upon further questioning by the trial court, the Defendant denied stealing the Claritin for which he was charged with theft on April 8, 2014.

Rick Owen testified that the Defendant had participated in the Hope Recovery Program in Waverly, Tennessee. Mr. Owen said that the Defendant was not in the program long before he tested positive for nicotine and left the program. Mr. Owen confirmed that the Defendant could reapply to the program and would be accepted.

3

After hearing this evidence, the trial court made the following statements to the Defendant:

> [The Defendant] was placed on probation the 2nd day of December of 2013 for escape. He was sentenced to four years and this probation violation was obtained about six months later, about four months later you're picked up on your first charge to which you plead guilty, but to which you say here under oath that you were not guilty, so you're not taking responsibility for that.
>
> You had that first charge and you get another charge on 5/3/14 where you were charged again for another theft and albeit that you say that you did it on purpose so that you could become incarcerated because you were without a home.
>
> You also failed to report to the probation officer and you failed to tell the probation officer of these new arrests.
>
> Certainly you've presented some good evidence here about going into the recovery program, lining up a home, lining up work. Well, that's something you should have done while you were out on probation.
>
> Your attorney argued that you're willing to comply with any conditions that the Court set[s] forth, well, the Court already set forth conditions and those conditions were set forth when you were placed on probation, so this is a situation where you haven't done what you were supposed to do and now you're coming in saying but I'm ready to do it now and the Court pays very little heed to that. I just to [sic] have to find beyond – a preponderance of the evidence that you violated your probation and certainly that burden has been met. . . .
>
> You've done what you've done here. You haven't complied with the conditions at this time, so, you know, show us wrong. So when you get out of jail be a good citizen. Get out there and [don't] ever come back in court. That will please everybody if you'll do that, so at this time I'm going to revoke your probation and order you to serve the remainder of your sentence.

It is from this judgment that the Defendant appeals.

## III. Analysis

The Defendant asserts that the trial court's revocation of his probation sentence was arbitrary and that his probation sentence should have been reinstated. The State responds that the trial court acted within its authority and soundly exercised its discretion in revoking the Defendant's probation sentence. We agree with the State.

A trial court's authority to revoke a suspended sentence is derived from Tennessee Code Annotated section 40-35-310 (2014), which provides that the trial court possesses the power "at any time within the maximum time which was directed and ordered by the court for such suspension, . . . to revoke . . . such suspension" and cause the original judgment to be put into effect. A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2014). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310 (2014); *see State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999).

The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995). In order for this Court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." *Shaffer*, 45 S.W.3d at 554. Further, a finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Id.* at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

The Defendant admitted he had violated his probation sentence based upon his subsequent arrests and failure to report for his May probation appointment. The Defendant's admission as well as the record provided substantial evidence to support the trial court's revocation of probation. After the trial court accepted the Defendant's admission, it retained discretionary authority, pursuant to Tennessee Code Annotated section 40-35-310(b), to order the Defendant to serve his sentence in incarceration.

The determination of the proper consequence of a probation violation embodies a separate exercise of discretion. *State v. Hunter*, 1 S.W.3d 643, 647 (Tenn. 1999). Case law establishes that "an accused, already on probation, is not entitled to a second grant of

probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C019711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App., at Nashville, Feb. 10, 1999), *perm. app. denied* (Tenn. June 28, 1999).

The record clearly reflects that the Defendant violated the terms of his probation. While on probation, the Defendant was arrested and subsequently pleaded guilty to two counts of theft. The Defendant then failed to report these new arrests to his supervising probation officer. The Defendant also failed to make any payments toward the owed court costs, and, finally, he missed his May probation appointment. Accordingly, the record supports the trial court's revocation of the Defendant's probation. Further, the trial court acted within its authority when it, upon revoking the Defendant's probation, ordered incarceration for the remainder of the Defendant's original sentence. We conclude that the trial court did not err when it ordered the Defendant to serve the balance of his sentence incarcerated. The Defendant is not entitled to relief.

## III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE